IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 22, 2005

## STATE OF TENNESSEE v. HAROLD HOLLOWAY, JR.

**Appeal from the Criminal Court for Hamilton County**
**No. 240270     Rebecca J. Stern, Judge**

_____

**No. E2004-00882-CCA-R3-CD Filed August 16, 2005**

_____

The Appellant, Harold Holloway, Jr., was convicted by a Hamilton County jury of second degree murder, attempted theft over $10,000, attempted aggravated robbery, and attempted carjacking. After a sentencing hearing, Holloway was sentenced to an effective forty-year sentence in the Department of Correction. On appeal, Holloway raises seven issues for our review: (1) whether the trial court erred in refusing to hear an ex parte motion for the appointment of a forensic psychiatrist and a neuropsychological examiner; (2) whether the convictions for attempted aggravated robbery and attempted theft over $10,000 violate double jeopardy principles; (3) whether the evidence is sufficient to support the conviction for attempted carjacking; (4) whether the court erred in failing to instruct the jury on any lesser included offenses of carjacking; (5) whether the court erred in allowing the State to question a defense expert in addiction medicine regarding prior bad acts committed by Holloway which were enumerated in reports relied upon by the expert; (6) whether the State improperly impeached a defense witness by questioning the witness regarding prior convictions which were not admissible under Tenn. R. Evid. 609; and (7) whether the trial court properly sentenced Holloway. After review of the record, we conclude that the convictions for attempted aggravated robbery and attempted theft over $10,000 violate principles of double jeopardy. The Appellant's remaining issues are without merit. Accordingly, the judgments of conviction and resulting sentences for second degree murder, attempted aggravated robbery, and attempted carjacking are affirmed. The judgment of conviction for attempted theft over $10,000 is merged with the Appellant's conviction for attempted aggravated robbery, and the sentence for attempted theft is vacated.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed in Part and Modified in Part**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JJ., joined.

Ardena J. Garth, District Public Defender; and Donna Robinson Miller, Assistant District Public Defender, Chattanooga, Tennessee, for the Appellant, Harold Holloway, Jr.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William H. Cox, District Attorney General; and Lila Statom, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

On the afternoon of June 29, 2000, several witnesses observed a large black male, later identified as the Appellant, get out of a vehicle near an apartment complex, cross the street, and get into a UPS truck, which had stopped to make a turn. The UPS truck was driven by Bradley Huskey. The truck drove off and immediately began "zig-zagging" as it traveled Shallowford Road in Chattanooga. Other motorists observed the Appellant hitting the UPS truck driver while the driver attempted to hang on to the steering wheel and keep the truck on the roadway. The victim could be heard screaming, but he was unable to defend himself as he was secured by a special type of seat belt. The Appellant then attempted to push and kick the driver out of the truck, resulting in Huskey's body "hanging out of the truck." At this point, the vehicle left the roadway, hitting several mailboxes, clipping a telephone pole, and eventually hitting a house on Shallowford Road before coming to rest. As the truck passed by the telephone pole, part of the victim's body, including his head, was outside the truck and struck the pole. The impact resulted in multiple blunt force injuries to the victim, including extensive skull and skeletal fractures with internal hemorrhaging, which produced death. After the truck stopped, the Appellant fled out the passenger side of the truck and proceeded on foot back to Shallowford Road where he began grabbing onto passing vehicles. He was dragged away from the scene by one vehicle, fell off that vehicle, grabbed another vehicle going in the opposite direction, and was dragged back to the scene.

Mitchell Hill lived next door to the house that was struck by the UPS truck. At the time of impact, Hill and his boss, Gary Foster, were standing in the yard. Hill immediately called 911 while Foster went to turn off the truck's engine. The victim was lying outside the truck on the ground with the buckled seat belt around his legs and ankles. Linda Johnson, a retired nurse, and her daughter, Amanda, who were traveling in a 1997 Cadillac, stopped to render aid. Upon stopping, they both exited the vehicle, leaving the doors open and the engine running. While they were approaching the victim, the Appellant entered the Cadillac. Foster witnessed these events, ran over, and grabbed the Appellant's arm to keep him from putting the car into gear. Linda Johnson returned to the car, entering the passenger side, and she "wrestled" with the Appellant for control of the gearshift. Johnson was eventually able to get the car in park, turn off the engine, and remove the keys. The Appellant then fled the vehicle and returned to the street where a fire truck was now parked. He jumped on the back of the truck, screaming "go go." Firemen were eventually able to talk the Appellant into getting off the truck.

The first police officer on the scene, Officer Eric Milchak, approached the Appellant and led him away from the fire truck. Upon learning that Milchak intended to handcuff him, the Appellant became aggressive in his efforts to escape. Milchak sprayed the Appellant in the face with mace,

but it appeared to have little or no effect. When Milchak stepped back because the Appellant came towards him in an aggressive manner, the Appellant broke free and ran back to Shallowford Road, again attempting to enter several vehicles. Other officers eventually arrived, and they struggled with the Appellant for several minutes before they were able to subdue him and get him in a police car.

After being taken into custody, the Appellant gave a statement to detectives indicating that he stopped the UPS truck to get a ride and that the driver gave him permission to enter the truck. He further stated that the victim thought the Appellant was going to do something to him despite the Appellant's assertions that he only wanted a ride. He said that the victim asked to be let out, took off his seat belt, and got out of the truck while it was still moving. The Appellant said that he grabbed the wheel when the victim exited the truck in order to avoid hitting the victim, but instead, he wrecked the truck. He further admitted that he needed a ride and got into the Cadillac which had stopped at the scene.

On August 23, 2000, a Hamilton County grand jury returned a four-count indictment charging the Appellant with first degree felony murder, aggravated robbery, carjacking, and attempted carjacking. A superceding six-count indictment was returned on May 8, 2002, charging the Appellant with: (1) felony murder during the perpetration of a theft; (2) felony murder during the perpetration of a robbery; (3) theft of property over $10,000; (4) aggravated robbery; (5) attempted carjacking of Linda Johnson's Cadillac; and (6) attempted carjacking of Normal Keller's vehicle.

In October 2002, the trial court granted an ex parte motion for the appointment of Dr. Murray Smith, an addiction medicine physician, to evaluate the Appellant. Following examination, Dr. Smith concluded that the Appellant met all the diagnostic criteria for chemical addiction and that he was suffering from a cocaine induced psychosis on the day of the murder.

On December 11, 2002, counsel for the Appellant filed a second ex parte motion for further evaluations by a forensic psychiatrist and a neuropsychological examiner. The trial court refused to hear the motion, finding that it was filed after the December 2, 2002 motion deadline. The case proceeded to trial on January 7, 2003.[1]

At trial, the Appellant defended upon grounds that at the time of the crimes, he lacked the capacity to form the required intent for the respective crimes based upon a cocaine induced psychosis. In support of this defense, the Appellant presented the testimony of his cousin, who stated that the Appellant had ingested a large amount of cocaine on the afternoon of June 29, and the expert testimony of Dr. Smith. In rebuttal, the State presented the testimony of Walter Mickulick, a professor of psychology at Chattanooga State, who concluded that the Appellant suffered from an antisocial personality disorder. He further explained that the Appellant was not mentally ill but was a person who, at a very early age, developed a set of traits which made him almost oblivious to standard rules of order and conduct.

---

[1]Prior to trial, the State dismissed Count 6 of the indictment.

After hearing the evidence presented, the jury found the Appellant guilty of second degree murder, attempted theft over $10,000, attempted aggravated robbery, and attempted carjacking. Following a sentencing hearing on March 3, 2003, the trial court sentenced the Appellant to twenty-four years for the second degree murder conviction, nine years for attempted aggravated robbery, five years for attempted theft over $10,000, and seven years for attempted carjacking. The court further ordered that the attempted robbery and theft convictions were to be served concurrently to each other but consecutively to the other sentences for an effective sentence of forty years in the Department of Correction. The Appellant's motion for new trial was denied on March 8, 2004, with this appeal following.

## Analysis

### I. Ex Parte Motion for Appointment of Experts

First, the Appellant alleges that the trial court erred in refusing to hear his second ex parte motion for the appointment of experts, namely a forensic psychiatrist and a neuropsychological examiner. According to an affidavit filed by trial counsel on December 11, 2002, at an ex parte conference with the trial court, he requested the appointment of these additional experts. At that time, the trial court informed counsel that it would not hear the motion as it was past the December 2, 2002 motion deadline. The Appellant asserts that the trial court's failure to hear and grant this motion denied him his right to a fair trial.

The history of the case shows that the crimes were committed in June 2000, and the Appellant was immediately arrested and was indicted for the offenses in August of that same year. Trial was originally set for June 23, 2002, but the case was continued until January 6, 2003, in order to allow trial counsel, who was appointed on February 19, 2002, after original counsel withdrew, to familiarize himself with the case and prepare a defense. It was not until October 2002, roughly ninety days prior to trial, that trial counsel filed his first ex parte motion for expert services, which the court granted. Dr. Smith was appointed to evaluate the Appellant. According to the record, the trial court instructed that the Appellant be "transported specially to Nashville to see his expert for the reason of getting it in on time." Based upon Dr. Smith's assessment and conclusions as well as interviews with other witness, trial counsel determined that further evaluation of the Appellant was necessary for a proper defense.[2] At this point, counsel began searching for a neuropsychological examiner and a forensic psychologist to examine the Appellant. According to trial counsel, he had trouble locating experts in these fields, despite his diligent efforts. On December 11, 2002, less than thirty days prior to trial, trial counsel presented his second ex parte motion seeking funds for services for yet to be found experts. On January 6, 2003, an offer of proof was submitted to the trial court in support of the Appellant's ex parte motion.

---

[2]Dr. Smith testified that a cocaine induced psychosis and paranoid schizophrenia are virtually indistinguishable; thus, in view of the Appellant's prior mental health history, further evaluation by a forensic psychiatrist was suggested. Dr. Smith testified that his speciality was addiction medicine and that he was not qualified in the field of forensic psychiatry. Moreover, Dr. Smith recommended consulting a neuropsychologist to determine the possibility of brain damage based upon a history of alcoholism.

We need not reach the issue of whether appointment of further experts would have been warranted because we find that the Appellant's motion came too late. The court may set a time for the making of pretrial motions or requests and, if required, a later date of hearing. Tenn. R. Crim. P. 12(c). Clearly, a motion of this nature filed within days of trial would have more likely than not required another continuance and delay of the trial. The decision whether to grant or deny a continuance rests within the sound discretion of the trial court. *State v. Morgan*, 825 S.W.2d 113, 117 (Tenn. Crim. App. 1991). The trial court has substantial discretion "to control the docket and the flow of justice therefrom" in order for the court system to function properly. *State v. Barbara Norwood*, No. 03-C-01-9111-CR-00366 (Tenn. Crim. App. at Knoxville, Dec. 10, 1992).

We find no evidence in the record to support a conclusion that the trial court abused its discretion in refusing to hear the Appellant's second ex parte motion. Indeed, the record reflects that the court refused to hear the motion because it was filed past the last day for filing motions, a date well within the discretion of the court to set. We conclude that the Appellant had ample opportunity to file his motion in compliance with the motion deadline. No showing of good cause for his failure to make a timely motion has been shown, despite his assertions to the contrary. This issue is without merit.

## II. Double Jeopardy - Attempted Aggravated Robbery/Attempted Theft over $10,000

Second, the Appellant asserts that his convictions for attempted aggravated robbery and attempted theft over $10,000 violate the principles of double jeopardy and should be merged into a single conviction. He argues that both convictions are supported by the attempted taking of the UPS truck and asserts that both convictions involve only a single victim, a single act, and the same identical evidence. The Appellant's conviction for attempted robbery stems from the attempted taking of the UPS truck from Bradley Huskey, and the attempted theft conviction stems from the attempted taking of property over $10,000 belonging to UPS.

First, although the State now argues that the Appellant's conviction for attempted theft under Count 3 and his conviction for attempted aggravated robbery under Count 4 constitute separate offenses, the language of the respective counts at the time of indictment does not reflect this to be the State's position. Indeed, the language in the indictment, as returned by the grand jury, and the proof at trial indicate alternative theories of prosecution for the taking of the same property.[3]

As noted, Count 3 charges theft of property valued at over $10,000 "belonging to UPS." The State argues that the conviction under this count is based on the attempted taking of parcels of property in the UPS truck belonging to various victims other than UPS. This argument is contrary, however, to the language of Count 3 which charges that the property belonged to UPS. Moreover, if the State had intended to prosecute under a theory of individual thefts, Tennessee Code Annotated section 40-13-209 (2003) requires that the ownership of the property be set forth in the indictment.

---

[3]The record reflects that the prosecutor did not argue for separate convictions during closing statements.

Finally, no valuation of any parcels or contents was established. In contrast, the proof at trial established that the UPS truck was valued at over $10,000. Under Count 4, the indictment language for aggravated robbery charged the taking from the person of Bradley Huskey "to wit; a UPS vehicle and its contents of value" by violence. Notwithstanding these shortcomings, we proceed to examine the Appellant's contention that the dual convictions violate double jeopardy principles.[4]

The double jeopardy clauses of both the United States and the Tennessee Constitutions protect against being put in jeopardy twice for the same offense. U.S. CONST. amend V; TENN. CONST. art. I, § 10. The double jeopardy clause provides protection against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after a conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969); *State v. Beauregard*, 32 S.W.3d 681, 682 (Tenn. 2000). The present case involves the issue of multiple punishments for the same offense. In such cases, "the focus is on legislative intent with the presumption being that the legislature typically does not mean for the same offense to be punished under two separate statutes." *State v. William Jason McMahan*, No. 03C01-9707-CR-00262 (Tenn. Crim. App. at Knoxville, Mar. 31, 1999) (citing *State v. Denton*, 938 S.W.2 373, 379 (Tenn. 1996)). Four steps are required in double jeopardy analysis: (1) an analysis of the two statutes in question; (2) an analysis of the evidence needed to prove the two offenses; (3) a consideration of the number of victims and discrete acts; and (4) a comparison of the purposes behind the two statutes. *Denton*, 938 S.W.2d at 379-81. Each step is weighed as it relates to the others, with none being determinative. *Id*. at 381.

The Appellant relies upon *State v. Lowery*, 667 S.W.2d 52 (Tenn. 1984) and *McMahan*, No. 03C01-9707-CR-00262 to support his argument. In *Lowery*, our supreme court held that a defendant could not be convicted of both robbery with a deadly weapon and grand larceny based on a single criminal act. *Lowery*, 667 S.W.2d at 57. In that case, the defendant used a gun to take money and car keys from a service station clerk; then he drove away in the clerk's car. The State argued that the jury could have found that the defendant formed the intent to steal the car subsequent to stealing the money and the keys. *Id*. However, the supreme court reasoned that for multiple convictions based upon such a subsequent intent to succeed, sufficient evidence must exist to support this inference. *Id*. Likewise, in *McMahan*, a panel of this court, conducting the four-step double jeopardy analysis, found that separate convictions for aggravated robbery and theft could not be supported because the same evidence was needed to support both convictions, the offenses had a single victim and stemmed from a single act, and the statutes had overlapping purposes. *McMahan*, No. 03C01-9707-CR-00262. Moreover, theft does not require proof of an additional fact that aggravated robbery does not require. *Id*. Thus, the first double jeopardy factor reflects that the legislature did not intend for a defendant to be convicted of both aggravated robbery and theft based upon the same set of facts.

---

[4] We elect review upon the Appellant's claim of double jeopardy as the Appellant's brief does not raise the issue of alternative theories of prosecution.

With regard to the second factor, the analysis of the evidence needed to prove the two crimes, our supreme court in *Duchac v. State*, 505 S.W.2d 237 (Tenn. 1973), examined the evidence required by two statutory provisions to determine whether the multiple punishments could stand:

> One test of identity of offenses is whether the same evidence is required to prove them. If the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by statutes. . . . There is no identity of offenses if on the trial of one offense proof of some fact is required that is not necessary to be proved in the trial of the other, although some of the some of the same acts may be necessarily proved in the trial of each.

*McMahan*, No. 03C01-9707-CR-00262 (quoting *Duchac*, 505 S.W.2d at 239).

The evidence supporting the attempted aggravated robbery conviction in this case was that the Appellant entered the UPS truck and attempted to take the truck, by force, from Huskey by putting Huskey in fear and causing him serious physical harm. The evidence supporting the attempted theft conviction resulted from the same actions, as the packages were contained in the UPS truck when it was taken. No additional evidence of a separate intent was needed to support the conviction.

The third step of the double jeopardy analysis looks to the number of victims and discrete acts. When there exists only one victim, multiple convictions generally are not justified. *Denton*, 938 S.W.2d at 381. With regard to this factor, the State asserts that there was more than one victim involved because the contents of the UPS truck belonged to the customers of UPS to whom they were being transported. We cannot agree. Clearly, as charged in both counts of the indictment, the victim of both the attempted aggravated robbery and the attempted theft over $10,000 was UPS. The driver, Bradley Huskey, was clearly in constructive possession of the property at the time of the incident as an agent of UPS. Moreover, there can be no question that only one discrete act occurred when the truck and the contents were taken.

With regard to the final step, consideration of the purposes behind the two statutes, our supreme court has held that the statutory provisions defining robbery and larceny protect overlapping interests. *McMahan*, No. 03C01-9707-CR-00262 (citing *Lowery*, 667 S.W.2d at 54). The court held that both protected property, while robbery protected people as well. *Id*. We find that the same reasoning applies to aggravated robbery and theft.

Thus, after considering the required steps of analysis as they relate to each other, we conclude that the Appellant's convictions for attempted aggravated robbery and attempted theft over $10,000 violate the principles of double jeopardy. Just as the court in *McMahan* found, the statutes are not distinct under *Blockburger*, the same evidence is needed to support both convictions, the offenses had a single victim and stemmed from a single act, and the statutes have overlapping purposes.

Accordingly, the attempted theft conviction must be merged into the attempted aggravated robbery conviction.

## III. Sufficiency of the Evidence- Attempted Carjacking

Next, the Appellant alleges that the evidence presented was insufficient to support his conviction for attempted carjacking. In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac*, 505 S.W.2d at 241, in such cases, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985)). However, as in the case of direct evidence, the weight to be given circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

The Appellant was convicted of attempted carjacking. A person commits a criminal attempt when that person, acting with the kind of culpability required for the offense, "[a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part." Tenn. Code Ann. § 39-12-101(a)(2) (2003). Carjacking is defined in pertinent part by Tennessee Code Annotated section 39-13-404(a) (2003) as "the intentional or knowing taking of a motor vehicle from the possession of another by use of . . . [f]orce or intimidation." The Appellant asserts that "there was absolutely no proof of force or intimidation

with regard to [his] . . . attempt[ed] carjacking of Linda Johnson's Cadillac." Rather, he asserts that the evidence established he was "in a paranoid psychotic state" but was not violent toward either Linda Johnson, her daughter, Mr. Foster, or Mr. Hill.

We disagree. The evidence, in the light most favorable to the State, shows that the Appellant got into Ms. Johnson's car when she and her daughter were out of the car, the doors were open, and the engine was running. Foster and Hill testified that they grabbed the Appellant's arm to keep him from putting the car in reverse and escaping. Additionally, Ms. Johnson's daughter, Amanda, testified that she grabbed the Appellant's arm and tried to pull him out of the car. In turn, the Appellant grabbed her arm and pushed it away. Moreover, Linda Johnson testified that she returned to her car, entered the passenger side, and wrestled with the Appellant to get the car back into park and turn off the engine. Finally, a passerby testified that she witnessed the Appellant attempting to get in the Cadillac and that the Appellant was hitting a woman who was hitting him back. Clearly, this indicates some force and intimidation. From these facts, a jury could have concluded that the Appellant was guilty of attempted carjacking. Questions of credibility of the witnesses are for the jury to determine. Any inconsistencies or questions of credibility were placed before the jury. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d at 835. After reviewing the facts in the light most favorable to the State, we conclude that the evidence presented at trial is legally sufficient to support the conviction. This issue is without merit.

## IV. Lesser Included Instructions- Attempted Carjacking

The Appellant argues that the trial court's failure to instruct on any lesser included offenses of attempted carjacking, namely attempted robbery and attempted theft, was error. A trial court must instruct a jury on a lesser included offense to the charged offense if the evidence introduced at trial is legally sufficient to support a conviction for the lesser included offense. *State v. Burns*, 6 S.W.3d 453, 464 (Tenn. 1999); *see also* Tenn. Code Ann. § 40-18-110 (2003). An offense is a lesser included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
>> (1) a different mental state indicating a lesser kind of culpability; and/or
>>
>> (2) a less serious harm or risk of harm to the same person, property, or public interest; or
>
> (c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

*Burns*, 6 S.W.3d at 466-67.

The Appellant relies upon *State v. Kerry L. Dowell*, No. M2002-00630-CCA-R3-CD (Tenn. Crim. App. at Nashville, June 27, 2003), *perm. to appeal denied,* (Tenn. 2003). In that case, a panel of this court held, without analysis, that "both robbery and theft of property are lesser included offenses under (a) and (b) of the *Burns* analysis." *Id*. While acknowledging that carjacking is codified under the "robbery" section of our Code, we reach a different conclusion. Moreover, we would note that a panel of this court in an analysis of this issue recently concluded that robbery and theft are not lesser included offenses of carjacking under either (a) or (b) of the *Burns* analysis. *State v. Joseph Wilson*, No. M2003-02151-CCA-R3-CD (Tenn. Crim. App. at Nashville, June 16, 2005).

Carjacking is defined as the intentional or knowing taking of a motor vehicle from the possession of another by use of: (1) a deadly weapon or (2) force or intimidation. Tenn. Code Ann. § 39-13-404(a). First, we would note as observed by the elements of the offense, the statute is designed to protect people from harm when their vehicles are taken by use of a deadly weapon or force or intimidation. In contrast, the crime of theft addresses the harm to property. On the other hand, robbery, which has been referred to as aggravated theft, is defined as the intentional or knowing theft of property from the person of another by violence or putting the person in fear. Tenn. Code Ann. § 39-13-401(a) (2003). A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103 (2003).

There is no dispute that theft is a lesser included offense of robbery under part (a) of the *Burns* analysis as all of the statutory elements of theft are included within the statutory elements of robbery. *State v. Bowles*, 52 S.W.3d 69, 79-80 (Tenn. 2001); *State v. Lewis*, 36 S.W.3d 88, 99-100 (Tenn. Crim. App. 2000). Only the use of violence or putting the person in fear elevates a theft to a robbery. *Bowles*, 52 S.W.3d at 80.

Review of the relevant statutes reveals that the statutory element of "taking from the person of another" is included within both a carjacking offense and a robbery offense. However, to "deprive," as used in the definition of a theft offense, means to: "(A) [w]ithhold property from the

owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner; (B) [w]ithhold property or cause it to be withheld for the purpose of restoring it only upon payment of a reward or other compensation; or (C) [d]ispose of property or use it or transfer any interest in it under circumstances that make its restoration unlikely." Tenn. Code Ann. § 39-11-106(8) (2003). On the other hand, carjacking does not require proof that a defendant took the vehicle with the intent to "deprive the owner of the property;" rather, it only requires proof that a defendant took property, *i.e.*, the motor vehicle, "from the possession of another." *Compare* Tenn. Code Ann. § 39-14-103 *with* § 39-13-404(a). The motive for the taking is irrelevant. Thus, while carjacking is a "taking," it is not a "taking" within the meaning of theft, which requires that the "taking" be with the intent to permanently deprive. *See U.S. v. Payne*, 83 F.3d 346, 347 (10th Cir. 1996). Therefore, the offense of theft contains a statutory element which is not included in the statutory elements of the offense of carjacking. Thus, under a *Burns* part (a) analysis, theft cannot be a lesser included offense of carjacking. Because robbery includes all of the elements of theft within its statutory elements, the offense of robbery also cannot be a lesser included offense of carjacking under part (a) of the *Burns* analysis.

In order to be considered a *Burns* part (b) lesser included offense, the additional element must either "establish a different mental state indicating a lesser kind of culpability" or "establish a less serious harm or risk of harm to the person, property or public interest." *Burns*, 6 S.W.3d at 467. The statutorily defined element, "with intent to deprive the owner of property," does not reflect a lesser kind of culpability than "taking a vehicle from the possession of another," regardless of whether or not the two statutory elements represent "different mental state[s]." Nor can we conclude that the element represents "a less serious risk of harm." Thus, robbery and theft are not lesser included offenses of carjacking under part (b) of the *Burns* analysis. Accordingly, we conclude that the trial court did not err in failing to charge theft and robbery as lesser included offenses of carjacking.[5] This issue is without merit.

## V. Prior Bad Acts of the Appellant

The Appellant argues that it was error to allow the State on cross-examination to elicit testimony from Dr. Smith regarding prior bad acts committed by the Appellant. As discussed *supra,* Dr. Smith was called as an expert witness for the purpose of establishing the Appellant's lack of capacity to form the required intent based on his chemical dependency and a cocaine induced psychosis. *See* Tenn. R. Evid. 702. Dr. Smith acknowledged on direct examination that he relied upon the Appellant's school records, medical and mental health records, and juvenile correctional facility records, among other sources, in forming the basis for his opinion. *See* Tenn. R. Evid. 703.

---

[5]We note that had we found theft and robbery to be lesser included offenses of carjacking, we would have found the failure to charge them to the jury harmless error. As the State asserts in its brief, the jury, by its' finding of guilt, necessarily determined beyond a reasonable doubt that the Appellant attempted to take a motor vehicle. By finding that a motor vehicle, the specific type of property that differentiates carjacking from robbery, was taken would make the failure to charge the lesser included offenses harmless.

On cross-examination by the State, the prosecutor questioned Dr. Smith regarding his reliance on findings by school and mental health professionals contained within the records in forming his opinion. Specifically, the Appellant challenges the following elicited testimony from Dr. Smith:

Q [Prosecutor]  When he was in junior school, he brought a gun to school, is that right?

A [Dr. Smith] Yes, sir, 1988, that's why Dr. McGee saw him to evaluate that occurrence.

Q After suspended for fighting?

A Yes, sir.

Q '88, people - - McGee, you talk about Dr. McGee, said he was - - he brags about fighting?

A Yes, sir.

Q "No concern about getting caught for inappropriate behavior."

A That's what I read also.

Q "Or hurting others? No sense of guilt or remorse?  Prides self in ability to control others with his size."  Is that right?

A Yes, sir.

Q "His behavior should be considered extremely dangerous."  Is that part of the report here?

A Yes, sir.

Q They say this about him, "Aggressive type with potential for continuance in adulthood."  Is that what they say?

A Yes, sir, I read that.  Yes, sir.

. . . .

Q 1988, "Harold threatened to kill people."  Did you read that?

A       Yes, sir.

. . . .

Q       1991, Taft, "Aggressive behavior."  Is that right?

A       Yes, sir.

Q       "Readmitted, violating the rules of aftercare."  Is that right?

A       Yes, sir.

. . . .

Q       The defendant told you he had an eight ball of cocaine?

A       Yes, sir.

Q       Where did he say he got it?

A       He - - I thought he said his cousin but certainly the cousin was involved.  He
        is a dealer, Mr. Holloway is a dealer.  He got it.

Q       He told you he was a drug dealer?

A       Yes.

During the course of this questioning, the Appellant's attorney objected multiple times on the ground that the questioning was getting into prior criminal acts.  Counsel conceded that the State could ask Dr. Smith about the Appellant's mental state and prior evaluations, but he asserted that it was improper to go into specific criminal acts.  The court ruled that the State was not to discuss specific charges but held that "it's proper cross examination to see what this doctor knows and what he has based his opinion on."

We agree with the trial court that the purpose of questioning Dr. Smith about the prior bad acts of the Appellant was not to show conformity with a character trait.  Rather, the information was elicited from Dr. Smith to challenge his diagnosis of the Appellant.  Tenn. R. Evid. 705 requires disclosure of the underlying facts or data relied upon by an expert in formulating his opinion.  *State v. Hall*, 958 S.W.2d 679, 712 (Tenn. 1997).  In *Hall*, our supreme court held that the prior bad acts of the defendant which were contained in an investigator's report were admissible to impeach the doctor's diagnosis and that the danger of their prejudicial effect did not outweigh their probative value.  *Id.*  We find this to be the case here.  Dr. Smith testified explicitly that he relied upon the information contained in the evaluations and reports in forming his diagnosis of the Appellant.  The

State was attempting to discredit that diagnosis by showing that the Appellant had violent behavior problems since the fourth grade, prior to his use of cocaine. This issue is without merit.

## VI. Impeachment of Witness by Prior Convictions

Next, the Appellant asserts that the State improperly impeached a "critical defense witness," Rick Pasley, whose testimony corroborated Dr. Smith's testimony that the Appellant was suffering from cocaine induced psychosis and paranoia on the day of the murder. The Appellant further asserts the prosecutor's continued questions, designed to elicit positive responses about convictions which would not meet the standards of Tenn. R. Evid. 609, showed a "deliberate disregard for proper procedure even after admonition from the Court" and "constituted a flagrant error verging on prosecutorial misconduct."

This issue is governed by Tenn. R. Evid. 609(a) which provides that if certain procedures are satisfied, a witness's credibility may be impeached by evidence of prior convictions if the prior convictions were punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or if the convictions involved dishonesty or false statement. Tenn. R. Evid. 609(a)(2). If the witness being impeached is not the accused, Rule 403 applies, and a conviction would be admissible to impeach unless "its probative value is substantially outweighed by the danger of unfair prejudice" or fulfills other criteria listed in that rule. Tenn. R. Evid. 609, Advisory Commission Comments. A trial court's ruling under Rule 609 will not be reversed on appeal absent an abuse of discretion. *State v. Mixon*, 983 S.W.2d 661, 675 (Tenn. 1999).

The objected to testimony is as follows:

Q      Mr. Pasley, is there any possibility that your recollection of the events may be less than accurate because of your use of cocaine on this particular day?

A      I did not use cocaine on that day.

Q      Do you not use cocaine?

A      I have.

Q      Do you sell cocaine?

A      No, I have got arrested. I have a record for that but I don't, I don't do that anymore.

Q      Did you plead guilty to selling cocaine?

. . . .

-14-

A       Yes.

Q       You did?

A       Yes.

Q       Are you the person that sells the cocaine to him or is he the person that sells it to you?

A       No.  Neither.

Q       What were you all doing running around all over the community going here and there? Were you selling or buying?

. . . .

Q       Sir, are you the Pasley that has previously been convicted in this jurisdiction of theft of property?  Was that you?

A       Yes, it is.

Q       Previously been convicted in this jurisdiction of aggravated assault, is that you?

A       I have no assault convictions.

Q       What about possession of drug paraphernalia?

A       That's me.

Q       What about possession of marijuana?

A       That's me.

Q       What about resisting an arrest?

A       That is me, sir.

At this point, defense counsel objected, stating "Your Honor, I think we're - -." At the same time the trial court informed the prosecution that "You're going beyond what's allowed."  The prosecutor, at that point, again verified Pasley's conviction for selling cocaine before moving to another topic.

We disagree with the State's assertion that the Appellant has waived this issue by failing "to take whatever action was reasonably available to prevent or nullify the harmful effect" of any error. The record indicates that the Appellant did offer an objection to the State's line of questioning, which the court sustained by admonishing the State that it was going beyond what was allowed.

The record before us reflects that the State improperly impeached Pasley by asking about prior misdemeanor convictions, *i.e.*, possession of drug paraphernalia, resisting arrest, and possession of marijuana, none of which are crimes involving dishonesty or false statement. The record is unclear regarding the grade of the conviction for selling cocaine, although again we would note that the sale of cocaine is not a crime involving dishonesty or false statement. *See State v. Waller*, 118 S.W.3d 368, 372 (Tenn. 2003). Thus, from the record before us, we agree that the State crossed the line in impeaching this witness. Nonetheless, the error was harmless in light of the relatively minor portion of Pasley's testimony that the impeachment evidence occupied, his proper impeachment with a crime involving dishonesty and corroboration by prosecution witnesses of Pasley's testimony that the Appellant appeared to be under the influence of drugs. We conclude that no prejudice inured to the Appellant based upon this improper impeachment.

## VII. Sentencing

Last, the Appellant contends that the trial court imposed excessive sentences. Specifically, he asserts that the court erred in its application of both enhancement and mitigating factors, as well as in ordering consecutive sentencing. When an accused challenges the length, range, or manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. When conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); *Ashby*, 823 S.W.2d at 168. Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000).

If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, where the trial court fails to comply with the statutory provisions of sentencing, appellate review is *de novo* without a presumption of correctness.

For standard offenders, the appropriate sentence range for a Class A felony is fifteen to twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1) (2003). The presumptive sentence is the midpoint within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). As applicable to the Appellant, for multiple offenders, the appropriate sentencing range for a Class C felony is six to ten years. Tenn. Code Ann. § 40-35-112(b)(3). The presumptive sentence is increased for applicable enhancing factors and decreased for applicable mitigating factors. The Appellant was sentenced, as a Range I standard offender, to serve twenty-four years for the second degree murder conviction, a Class A felony. He was also sentenced, as a Range II multiple offender, to serve nine years for the attempted aggravated robbery conviction and seven years for the attempted carjacking, both Class C felonies.

### a. Enhancement Factors

With regard to the second degree murder conviction, the trial court found the following enhancement factors applied: (2) that the Appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the range and (12) that the felony resulted in death or serious bodily injury and involved a defendant who had previously been convicted of a felony that resulted in bodily injury. *See* Tenn. Code Ann. § 40-35-114 (2), (12) (2003).

With regard to the attempted aggravated robbery conviction, in addition to applying factors (2) and (12), the court applied enhancement factors (9) that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; (11) that the defendant had no hesitation about committing a crime when the risk to human life as high; and (17) that the crime was committed under circumstances under which the potential for bodily injury to a victim was great.[6] *See Id.* at (2), (9), (11), (12), (17). Finally, the court applied enhancement factors (2) and (9) to the attempted carjacking conviction. *See Id.* at (2), (9).

In his brief, the Appellant asserts that these enhancement factors, except factor (2), were applied in error based upon the recent holding in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). He relies completely on *Blakely* for the proposition that the factors were erroneously applied, except for one sentence in his brief which states: "[While Defendant raised numerous other objections to the enhancement factors the Trial Court applied at Sentencing, and continue to do so, given the recent application of the Blakely rule, it is probably not necessary to reiterate those legal objections here nor to cite the cases in support thereof.]"

The alleged *Blakely* error has been rendered moot by the Tennessee Supreme Court's recent decision in *State v. Edwin Gomez and Jonathan S. Londono*, 163 S.W.3d 632 (Tenn. 2005). In so holding, our supreme court found that the 1989 Sentencing Reform Act "authorizes a discretionary,

---

[6]Proof of potential for great bodily injury is inherent in the offense of attempted aggravated robbery; therefore, factor (17) was misapplied. *See State v. Joey Dewayne Thompson*, No. E2003-00569-CCA-R3-CD (Tenn. Crim. App. at Knoxville, July 16, 2004) (citing *State v. Lambert*, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987)).

non-mandatory sentencing procedure . . . [which] sets out broad sentencing principles, enhancement and mitigating factors, and a presumptive sentence, all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature. Under the Reform Act, the finding of an enhancement factor does not mandate an increased sentence." *Id.* Accordingly, the court held that the Tennessee Sentencing Reform Act does not violate the Sixth Amendment guarantee of a jury trial and is, thus, not affected by the *Blakely* decision. *Id.* Thus, the Appellant is entitled to no relief on *Blakely* grounds.

Moreover, we would note that the Appellant has waived the issue of misapplication of the enhancement factors, on grounds other than *Blakely,* by his failure to cite to the record and failure to provide any supporting authority for the alleged errors. *See* Tenn. R. App. P. 27.

### b. Mitigating Factors

The Appellant further asserts that the trial court erred in failing to give "full credit" for numerous applicable mitigating factors. He appears to argue that the court did not give proper consideration under the catchall mitigator to the fact that the Appellant suffered from a cocaine induced psychosis resulting in complete paranoia and irrationality, that the Appellant was extremely sleep deprived, and that he had a significant untreated mental illness and lengthy paranoid psychotic history. He also contends that the court should have considered the fact that the Appellant was completely unsupervised as a child, developed a drinking and marijuana habit at the age of eleven, was suffering alcoholic blackouts by the age of twelve, and was snorting cocaine at the age of thirteen.

However, review of the record indicates that the trial court did consider these factors in determining the Appellant's sentences. The court rejected, and the Appellant does not appear to challenge, application of mitigating factor (8), that the defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense, and (11), that the defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct. *See* Tenn. Code Ann. § 40-35-113(8), (11) (2003). The court held that: "I find he was obviously acting in a bizarre manner, that he was affected by this cocaine, . . . - - induced psychosis and that he was probably sleep deprived. However, I find all of those things were as the result of voluntary intoxication." The court went on to apply the catchall mitigating factor, though giving it slight weight, based upon the Appellant's borderline intellectual ability, his parents' divorce and neglect by his father, his identifying processing disorder, his significant problems in the areas of oral expression and basic reading skills, and his psychiatric disorders and specific learning disabilities. Clearly, the court was aware of and considered each of the facts that the Appellant now asserts was not applied in mitigation of his sentence. The weight to be assigned to the appropriate enhancement and mitigating factors falls within the sound discretion of the trial court so long as that court complies with the purposes and principles of the 1989 Sentencing Act and its findings are supported by the record. *State v. Boggs*, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). Here the record supports the weight given to the mitigation evidence. Moreover, notwithstanding procedural waiver of his right to

challenge enhancing factors, we conclude that the sentences, as imposed, are justified under the principles of sentencing.

### c. Consecutive Sentencing

Finally, the Appellant asserts that the trial court erred in ordering consecutive sentences. The court ordered that the attempted theft over $10,000 and the attempted aggravated robbery conviction be served concurrently but consecutively to both the second degree murder and the attempted carjacking convictions, resulting in an effective sentence of forty years. The Appellant again raises *Blakely* in support of his argument. He also argues that the twenty-four year sentence for second degree murder is "adequate time to punish [the Appellant] for the tragic circumstances," particularly because it requires service of 85% of the sentence term. He further asserts that he is now on medication, has an adequate opportunity to rehabilitate himself, and is remorseful.

A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "[t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood, that the "defendant is an offender whose record of criminal activity is extensive," or that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(1), (2), (4) (2003). However, before sentencing the Appellant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes and necessary to protect the public against further criminal conduct. *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002); *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995).

The trial court found that multiple criteria were established, specifically stating:

> I do find under TCA 40-35-115, based on all the testimony and all the reports before me and by the testimony of his doctor at trial, the defendant is a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood, to-wit, selling drugs. I don't recall hearing anything of any substantial jobs that he had other than selling drugs.
>
> No. 2. I find the defendant is an offender whose record of criminal activity is extensive. He has two felony convictions and a multitude of misdemeanors and juvenile convictions.
>
> I find that No. 4, the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. That's based on the facts and

circumstances of this case and the fact that he has prior assault and aggravated assault convictions.

The record amply supports a finding that the Appellant was a professional criminal with no other source of income other than that earned from selling illicit drugs. Moreover, the pre-sentence report introduced into evidence establishes convictions for assault, cocaine possession, escape, resisting a stop or arrest, and aggravated assault. Further, the Appellant was adjudicated delinquent for theft of property. Additionally, the circumstances of these crimes establish that the Appellant is a dangerous offender with little or no regard for human life and no hesitation about committing crimes in which the risk to human life is high. Moreover, we conclude that the aggregate sentences are reasonably related to the severity of the crimes committed. Thus, we find no error in the imposition of consecutive sentences as ordered. This issue is without merit.

## CONCLUSION

Based upon the foregoing, the judgments of conviction and resulting sentences for second degree murder, attempted aggravated robbery, and attempted carjacking are affirmed. The judgment of conviction for attempted theft over $10,000 is merged with the Appellant's conviction for attempted aggravated robbery. The case is remanded for entry of a corrected judgment of conviction with respect to the Appellant's conviction for attempted theft, to reflect merger as directed and vacation of the sentence imposed for this offense.

_____

DAVID G. HAYES, JUDGE

-20-